**MAEA TALENI of Faleniu and UELE of Faleniu, Plaintiffs**

v.

**TALIO of Faleniu, Defendant**

No. 37-1949

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Matai Name: "Magalei" of Faleniu]

December 6, 1949

A. A. MORROW, *Chief Justice;* MALEPEAI, *District Judge;* and TIUMALU, *District Judge.*

## DECISION

Heard at Fagatogo November 21 and 22, 1949.
Sala for Maea; Meauta for Uele; Puaatuua for Talio.

MORROW, *Chief Justice.*

We are to determine the right to the succession of the matai name Magalei of Faleniu in this proceeding. Talio of Faleniu filed his application with the Registrar of Titles to be registered as the holder of the Magalei title. Maea and Uele, both of Faleniu, filed their objections and became candidates for the name along with Talio. Hence this litigation. The requirements for eligibility to hold a matai name are prescribed by Sec. 926 of the A. S. Code. The undisputed evidence is that each of the candidates meets all of these requirements and is eligible for registration as the holder of a matai name.

Sec. 933 of the Code provides:

"In the trial of matai name cases, the High Court shall be guided by the following in the priority listed:

(a) The wish of the majority or plurality of the family;

(b) The forcefulness, character, personality and capacity for leadership of the candidate;

(c) The best hereditary right in which the male and female descendants shall be equal in the family where this has been customary, otherwise, the male descendant shall prevail;

(d) The value of the holder of the matai name to the Government of American Samoa."

Each of the three candidates filed a petition with the court purporting to be signed by the various members of the Magalei family supporting his candidacy. There were 76 names on Maea's petition and 111 on Talio's and 190 on Uele's. Uele testified that all of the signers on the three petitions were members of the Magalei family. Maea claimed that 35 of the 111 signers on Talio's petition did

529

not belong to the family, and that at least 43 of the 190 signers on Uele's petition were non-family members. As to the remaining 147 on Uele's petition, Maea did not know whether all of them were family members or not. Talio objected to 21 of the 76 names on Maea's petition on the ground that they were not members of the family. He claimed that 137 of the 190 on Uele's petition did not belong to the family.

Maea's mother, who came from Pago Pago, married Maea's father before the government was established. His father was a member of the Magalei family at the time of the marriage. The 21 signers on Maea's petition objected to by Talio were relatives of Maea's mother and live in Pago Pago. We think that the objection to these 21 names is well taken. If a young man in a Samoan family marries a young woman from another clan, as is usually the custom for biological reasons, certainly all the members of her clan do not automatically become members of his clan and have a right to participate in the selection of a new matai for his clan. If the custom or law were otherwise and 12 young men in a clan married young women from 12 different clans then the members of the 12 different clans could outvote the members of the young men's clan in the selection of a new matai for the young men's clan and the power of the members of the young men's clan to select their own matai would be destroyed because of the marriages of the young men of the clan to women of other clans. In the case of *Gi v. Maaele*, No. 26-1949 (Am. Samoa) we held that when a young man came from Upolu and was given the Mageo title in Pago Pago the descendants of his relatives in Upolu did not become members of the Mageo family in Pago Pago.

About 1902 Siausulu became the Magalei. Prior thereto he had married a Magalei woman. He had no Magalei blood in his veins and was merely a married man (as we

say in Samoa) to the family. The evidence showed that 56 of the signers on Uele's petition were from Iliili and Pago Pago. That they were descendants of Siausulu's brothers and sisters. Certainly Siausulu's marriage into the Magalei family did not make his relatives by blood members of the Magalei family. Otherwise if a dozen young women in the Magalei family should marry young men in as many other clans then the relatives of the young men in the other clans could control the selection of a new Magalei because they could outvote the members of the Magalei family prior to the marriages. We do not believe that under Samoan customs or under the law that these 56 descendants of relatives of Magalei Siausulu, a married man to the family, can properly be counted as Magalei family members. It was admitted that Whitney whose name appeared on Uele's petition was in America at the time his name was signed to the petition in Samoa. There was no evidence that his father who signed his name had any authority to do so. There is another weakness in Uele's petition. Most of the names were put on it in March 1949, three months before Talio filed his application with the Registrar of Titles to be registered as the Magalei. In view of our findings on the second, third and fourth issues in this case we do not consider it absolutely necessary that we determine which candidate has the support of a majority or plurality of the family. See *Leano v. Leti*, No. 27A-1949 (Am. Samoa); *Maile, Pua and Epati v. Faaliga Sii*, No. 21-1949 (Am. Samoa). We shall not decide this case upon the first issue since the decision would be the same regardless of which candidate has the majority or plurality of the family with him.

Talio is 30 years old. Maea is 63. Uele testified that he was 59 years old. However on June 24, 1947 while appearing as a witness in the case of *Maea, Uele, Letele Pouli, Faialaga v. M. Alapeti*, No. 20-1947 (Am. Samoa) he tes-

531

tified that he was 64 years old. On May 19, 1949 while appearing as a witness in the case of *Si'ufanua, Tuiaana v. Uele*, No. 16-1949 (Am. Samoa) he testified that he was 60. He was obviously born before the government was established in 1900. There is no government record of his birth. If he were 64 on June 24, 1947 he is 66 now. Due to the inconsistency of his testimony at different times we do not believe that Uele knows how old he is. This is not uncommon with respect to people born before birth records were kept. Talio is in the prime of life. Maea and Uele are obviously in their declining years. Maea's counsel in referring to him in his argument said "He (Maea) will live one or two more years and will die and leave the title to another one. Talio is in his prime of life and he is very young." Talio completed the seventh grade in school and speaks fairly good English. Maea completed the fifth grade and does not speak English. Uele completed the sixth grade and speaks English very well. Each of the candidates has plantations. Talio was in the Samoan Marines during the war. He is now attending the Vocational School studying agriculture. Maea has been a matai for about 20 years. He testified that he worked as a carpenter for Public Works for about forty years. He also testified that he made boats and Samoan curios. Uele was a Mormon Missionary in Savaii for about six months in 1925–26. He sells pineapples, mountain apples, bananas, taro, and other vegetables. He makes many Samoan curios. He was an interpreter in the Samoan Hospital for eight years. He worked as a painter, watchman and assistant carpenter for some time at the Mobile Hospital No. 3 during the war. He has been a Mormon Pastor for many years.

Talio while a student at the Vocational School receives $120 a month from the Veterans Administration. He sells bananas, copra, pigs, chickens. He testified that his income from these sources, exclusive of the $120 a month from the

Veterans Administration aggregates about $700 a year. Maea sells products of his plantations as well as Samoan curios which he makes. He testified that his income was about $300 to $400 a year. Uele sells the products of his plantations including vegetables, also chickens and pigs. He has an income of about $20 a month through a brother of his wife. He testified that his total income was about $1,000 a year. He also testified that he was a kind man. We believe that that is true. The court had an excellent opportunity to observe the personality of the three candidates during the hearing. It is our conclusion from the evidence and our observations at the hearing that Talio prevails over Maea and Uele on the issue of forcefulness, character, personality and capacity for leadership.

Talio is the blood son of Magalei Pouli and has one half Magalei blood in his veins. Maea is the grandson of Magalei Faatafuga. He has one fourth Magalei blood in his veins. Uele is the blood son of Magalei Solomona and has one half Magalei blood in his veins. Obviously Talio and Uele prevail over Maea on the issue of hereditary right. With respect to each other since each of them has one half Magalei blood in his veins, they stand on an equality.

We have many times said that the value of the holder of a matai name to the government depends for the most part upon his ability to look after the affairs of his family. That ability depends upon his forcefulness, character, personality and capacity for leadership. Talio is 30 years of age and in the prime of life. The other two candidates are in their declining years. Talio is continuing his education. We believe that Talio, particularly in view of the fact that he is in the prime of life, would be of more value to the government as the holder of the name Magalei than would either of the other two candidates who are in their declining years.

Since we find that Talio prevails over Maea on the second, third and fourth issues, (we make no finding as to the first issue because it is not necessary) and since we further find that Talio prevails over Uele on the second and fourth issues and stands on an equality with him with respect to the third issue, we must award the name to Talio.

It is ORDERED, ADJUDGED and DECREED that Talio of Faleniu shall be registered as the holder of the matai name Magalei of Faleniu. The Registrar of Titles will be so advised.

Costs in the amount of $25.00 are hereby assessed against Maea and a like amount against Uele, the same to be paid within 30 days.